UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
:
GENERAL ELECTRIC CAPITAL                         :
CORPORATION,                                     :
                                                 :
                              Plaintiff,         :
                                                 :
              -v-                                :
                                                 :
BESTWAY TOUR & TRAVEL, INC., et al.,             :
                                                 :
                              Defendants.        :
                                                 :
----------------------------------------------------------X

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: NOV 07 2012

No. 09 Civ. 0442 (RA)

OPINION AND ORDER

        Plaintiff General Electric Capital Corporation ("General Electric") filed this action on

January 15, 2009 against Defendants Bestway Tour & Travel, Inc. ("Bestway Tour"), Wilson

Cheng and Vivian Cheng, seeking money owed under a series of guaranty agreements. On May

27, 2009, Judge Gardephe, the judge initially assigned to this case, entered a default judgment in

favor of General Electric and referred the matter to the Honorable Kevin Fox, United States

Magistrate Judge, for an inquest and Report and Recommendation ("Report") on damages.

Judge Fox issued his Report on August 6, 2010. General Electric filed timely objections to the

Report. Defendants did not participate in the inquest or file objections to the Report. On July

19, 2012, the case was reassigned to this Court, which held a conference on October 25, 2012 to

review General Electric's objections. Having carefully considered de novo the issues presented

by the Report, the objections and the evidence presented by General Electric, the Court sustains

the objections in part and overrules them in part, and adopts the Report as the opinion of the

Court, except to the extent inconsistent with this opinion.

**I.     Background**

        The underlying facts are set forth in Judge Fox's thorough and well-reasoned Report, and

will not be detailed here. In essence, General Electric alleges that Defendants failed to fulfill their obligations under a series of guaranty agreements. The guaranty agreements required Defendants to undertake the obligations of Bestway Coach Express Inc. ("Bestway Coach") under several lease agreements with companies now owned by General Electric, in the event of default by Bestway Coach. The lease agreements provided for the leasing of vehicles and equipment to Bestway Coach.

In his Report, Judge Fox concluded that General Electric should be awarded a total of $249,114.41 plus pre-judgment and post-judgment interest. (Report at 38.) General Electric objects to the aspects of the Report that limit its recovery. Specifically, General Electric contends that it is due an additional $220,049.00 because: (1) the Report misreads the payment history pertinent to a lease dated August 1, 2007; (2) Defendant Bestway Tour is responsible for the amount due under such lease as a matter of law under its continuing guaranty; and (3) General Electric is entitled to a terminal rental adjustment under a lease dated June 25, 2001. (Obj. at 2.)

## II.    Standard of Review

When reviewing a report and recommendation, a court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). A court may accept those portions of a Report to which no objections are made, as long as the factual and legal bases supporting the findings are not clearly erroneous. See Jones v. Heath, No. 10 Civ. 8644(RJS), 2012 WL 2673649, *2 (S.D.N.Y. July 5, 2012); Walker v. Vaughan, 216 F. Supp. 2d 290, 291 (S.D.N.Y. 2001). To the extent that a party files specific objections to the magistrate judge's findings, the court must make a de novo determination. 28 U.S.C. § 636(b)(1)(C); see U.S. v. Male Juvenile, 121 F.3d 34, 38 (2d Cir.

2

1997); DB Structured Prods., Inc. v. Balt. American Mortgage Corp., No. 07 Civ. 4109(DLC),

2009 WL 948343, at *1 (S.D.N.Y. Apr. 7, 2009). In making this determination, the court may

"receive further evidence or recommit the matter to the magistrate judge with instructions." 28

U.S.C. § 636(b)(1)(C).

Upon entry of a default judgment, "the allegations in the complaint with respect to the

amount of damages are not deemed true." Credit Lyonnais Sec. (USA), Inc. v. Alcandara, 183

F.3d 151, 155 (2d Cir. 1999). The plaintiff, however, is entitled to all reasonable inferences from

the evidence it offers. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981);

Vierling Commc'ns v. Stroyls, No. 09 Civ. 6654(CS)(GAY), 2011 WL 5854625, at *1

(S.D.N.Y. Sept. 16, 2011). In order to ascertain the amount of damages, the court must conduct

an inquiry sufficient to establish them to a "reasonable certainty." Credit Lyonnais, 183 F.3d at

155 (2d Cir. 1999).

## III.   General Electric's Objections[1]

### A. Outstanding Rent for Lease 1

General Electric's first objection involves a lease agreement between Bestway Tour and

General Electric dated August 1, 2009 that renewed and consolidated four prior leases ("Lease

1"). General Electric contends that Judge Fox misread the payment history provided for Lease 1

in two ways: (1) by not accounting for money owed between October 2008 and December 2009,

and (2) by not accounting for payments rejected for insufficient funds. (Obj. at 3-5.) General

Electric claims this error resulted in an award for outstanding rent under Lease 1 that was

deficient by $167,148.00.

---

[1] On August 23, 2010, General Electric moved to supplement the inquest record with the Declaration of William Eynon dated August 20, 2010 ("Eynon Declaration"). The Court has the authority to consider additional evidence, pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(3), if it so chooses. The Court grants General Electric's motion to supplement the inquest record with the Eynon Declaration.

3

The Report did not award any damages for outstanding rent after October 1, 2008 on the grounds that "insufficient documentary evidence supporting such an award" was submitted in that "the payment history provided to the Court reflects only seven unpaid payments" occurring from March 2008 through October 2008. (Report at 14.) General Electric contends that the Report "erroneously concludes that because no invoices were sent after October 1, 2008, the payment history, although dated May 19, 2010, is incomplete." (Obj. at 3.) General Electric offers two explanations for why it stopped sending invoices to Bestway Coach after October 1, 2008. First, General Electric argues that the four leases that comprised Lease 1 had acceleration provisions which allowed General Electric to collect the balance of the payments upon default. (Obj. at 3-4.) Therefore, once Bestway Coach had defaulted, General Electric had no reason to continue sending invoices. (Id.) Second, General Electric argues that it stopped sending invoices to Bestway Coach because, in October 2008, Bestway Coach had filed a Chapter 7 petition for bankruptcy protection in the United States Bankruptcy Court in the Southern District of New York and thus ceased efforts to fulfill its obligations under the lease. (Id.) The Report does not address Bestway Coach's bankruptcy or the acceleration of the leases.

The Court finds General Electric's explanation for the lack of invoices satisfactory. The acceleration provisions in the individual leases that comprise Lease 1 make clear that Bestway Coach's failure to make any payment when due qualifies as default, as does filing a petition in bankruptcy. (Pl. Findings of Fact and Conclusions of Law, Ex. B ¶ 14; Ex. D ¶ 17; Ex. F ¶ 17, Ex. G ¶ 17.) Additionally, the leases require that upon default, Bestway Coach would be liable for the balance of the remaining payments. (Id.) As a result, the amounts due from October 2008 until the expiration of the lease in December 2009, totaling $167,148.00, were accelerated when Bestway Coach defaulted and will be awarded to General Electric in addition to the

$93,485.00 Judge Fox awarded for outstanding rent pursuant to Lease 1.

Second, General Electric argues that the Report erred by not accounting for payments that Bestway Coach made but were rejected for insufficient funds. (Obj. at 4.) General Electric's declaration that accompanied the payment history states that "[t]he asterisks in [the payment history] denote payments that were rejected for insufficient funds." (2010 Graff Decl. ¶ 7.) However, the materials submitted to Judge Fox failed to inform him that the asterisks appear on the row below the rejected payment. (Obj. at 4.) While General Electric characterizes this fact as "quite clear," the Court disagrees. (Id.) Without a more useful explanation of how to interpret the payment history, Judge Fox could not have identified the rejected payments and determined what amount of money, if any, should be awarded for such payments. Furthermore, based on the Court's reading of the payment history, it appears that all payments rejected for insufficient funds were later accounted for and are included in the $93,485.00 recommended by Judge Fox for outstanding rent under Lease 1. At the conference held on October 25, 2012, General Electric did not dispute this finding and indicated that it is no longer seeking additional funds under this theory. Therefore, the Court does not award any additional damages for payments rejected for insufficient funds under Lease 1.

### B. Bestway Tour's Liability under Lease 1

General Electric's second objection is that the Report erred in concluding that Bestway Tour was not liable for the amounts owed under Lease 1. (Obj. at 5.) General Electric's complaint seeks joint and several liability of all three Defendants under Lease 1. (Compl. at 8.) Lease 1 renewed and consolidated four individual leases, one of which was entered into on January 21, 1998 ("Lease A"). After reviewing the submitted documents, Judge Fox found that the guaranty agreements for Lease A were only executed by Wilson Cheng and Vivian Cheng

5

and concluded that "contrary to the representation made in the Graff declaration, the guaranty agreements dated January 21, 1998, do not implicate Bestway Tour." (Report at 20.) Additionally, while there was sufficient proof that Bestway Tour was a guarantor of the other three leases that were consolidated into Lease 1, "[n]o proof was provided, by the plaintiff, regarding the value of the individual leases." (Report at 21.) Therefore, Judge Fox could not "determine the dollar amount for which Bestway Tour [was] liable, based on the guaranty agreements it signed for three of the four leases." (Id.) As a result, the Report recommended that Bestway Tour not be held liable for any relief granted under Lease 1.

General Electric contends that Judge Fox's conclusion is incorrect and that a corporate guaranty for Bestway Tour was included in the record. (Obj. at 5.) General Electric's objections correctly state that the relevant corporate guaranty "is part of Exhibit B to the September 1, 2009 Graff Declaration and follows the debis Lease." (Obj. at 5.) However, while Exhibit B was submitted to Judge Fox with General Electric's Findings of Fact and Conclusions of Law on September 2, 2009, the accompanying declaration ("2009 Graff Declaration") improperly indicated that the document was included in Exhibits P and Q. (2009 Graff Decl. ¶ 20). In fact, Exhibits P and Q contain the guaranties of Wilson Cheng and Vivian Cheng but not Bestway Tour. As stated in General Electric's objections, Exhibit B contains the January 21, 1998 lease (Lease A) as well as the relevant corporate guaranty of Bestway Tour. Judge Fox followed the guidance of the 2009 Graff Declaration and reasonably concluded that Bestway Tour was not a guarantor of Lease A.

The Court now has the benefit of General Electric's corrected information and is in a position to identify the Bestway Tour corporate guaranty in the record. Under this corporate guaranty, Bestway Tour "unconditionally and irrevocably guarantees the payment and

6

performance of any and all obligations" of Bestway Coach under its lease entered into on

January 21, 1998. (Pl. Findings of Fact and Conclusions of Law, Ex. B (Corporate Guaranty).)

Therefore, the Court finds that Bestway Tour is jointly and severally liable along with Wilson

Cheng and Vivian Cheng for the entire amount of damages provided for under Lease 1.

### C.  Terminal Rental Value under Lease 2

Lastly, General Electric argues that the Report erred in denying recovery of the terminal

rental adjustment under a Commercial Transportation Lease Agreement between Bestway Coach

and Partnership Financial Services, Inc., which was later acquired by General Electric, dated

June 25, 2001 ("Lease 2"). (Obj. at 5.) As a terminal rental adjustment lease, Bestway Coach

leased a vehicle from General Electric and was required to pay a fee if the lease agreement was

terminated before the expiration of the lease. (Pl. Findings of Fact and Conclusions of Law, Ex.

H ¶ 12.)

The Report concluded that "it is not possible for the Court to assess what amount, if any,

was realized from the rental vehicle sale(s) since: (1) the vehicle(s) governed by Lease 2 is never

identified specifically, in the excerpt of Lease 2 that was provided to the Court; and (2) Exhibit

T, in which 'the Terminal Rental Value [is] defined,' was not provided to the Court, despite the

express directive in the Court's April 26, 2010 order, that the plaintiff provide exhibits and any

other attachments to the leases, which would enable the Court to determine damages." (Report

at 22.)

The Court's review of the record confirms the Report's finding that the vehicle governed

by Lease 2 is not specifically identified on the lease since the VIN number is not denoted on the

excerpt of Lease 2 that was provided to Judge Fox. However, through its objections, General

Electric has since supplied the Court with Exhibit C to Lease 2 which provides the VIN number

of the vehicle governed by Lease 2.  This VIN number identified on Exhibit C is the same as the

VIN number that was provided through testimonial evidence in the 2009 Graff Declaration and

in the Complaint.  General Electric also supplied the Court with Exhibit T, a table listing

termination value percentages by rental periods, which includes the definition of "Terminal

Rental Value."  Once again, although all the Report's conclusions were understandable based on

the information that was available to Judge Fox, now that General Electric has provided the

Court with additional information, this Court can properly calculate the terminal rental

adjustment.  Accordingly, the Court concludes that General Electric should be awarded

$52,901.00 pursuant to Lease 2.

## IV.    Conclusion

For the foregoing reasons, the Court adopts Judge Fox's Report, except as to the three

issues discussed above.  The Court awards the following damages in addition to the $249,114.41

specified in Judge Fox's Report: (1) an additional $167,148.00 in outstanding rent under Lease 1

and (2) $52,901.00 for the terminal rental adjustment under Lease 2.  General Electric is also

awarded prejudgment interest, as calculated by the Clerk of Court, commencing from January

15, 2009 through the entry of judgment, at the rate of nine percent per annum and post-judgment

interest, to be calculated by the Clerk of Court, pursuant to 28 U.S.C. § 1961(a), commencing

from the date of judgment.  Additionally, all three Defendants shall be held jointly and severally

liable for the total damage award.  The Clerk of Court is respectfully directed to docket General

Electric's objections to the Report, to enter judgment for General Electric, and to close the case.

SO ORDERED.

Dated:        November 7, 2012
              New York, New York

                                        Ronnie Abrams
                                        United States District Judge